IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES C. WINDING                                                                             PLAINTIFF

VS.                                               CIVIL ACTION NO. 4:08cv99-FKB

BART GRIMES, et al.                                                  DEFENDANTS

## **MEMORANDUM OPINION**

### I. **Background and Facts**

Plaintiff, a state inmate housed at East Mississippi Correctional Facility (EMCF), brought this action pursuant to § 1983 against employees of The Geo Group, Inc., the private company which operates the prison, alleging violations of his constitutional rights. In his complaint, Plaintiff alleged that Defendant Grimes, the prison's assistant warden for security, issued him a Rules Violation Report (RVR) in retaliation for having threatened to add Grimes as a defendant in a lawsuit. Plaintiff's complaint also referenced other alleged wrongs on the part of two other prison officials, Joyce Graham and Dale Caskey. However, prior to trial, Winding filed a motion to dismiss Defendants Graham and Caskey, stating that the only claim he wished to pursue was the retaliation claim against Grimes. Plaintiff's motion was granted at trial, and all claims against Graham and Caskey were dismissed. The case was tried before the undersigned, the parties having consented to jurisdiction by the magistrate judge pursuant to 28 U.S.C. § 636(6). Having considered the evidence presented at trial, the court makes the following factual findings and conclusions of law.

The evidence at trial indicated no real dispute as to the material facts. On the morning of March 25, 2008, Winding, who was housed in the C pod of Unit 3 at the

prison, packed up his personal property, exited the pod, and refused to return, stating that he feared for his safety on the pod. When prison officers ordered him to return to his assigned housing unit, he refused to do so, and he likewise refused to submit to restraints in violation of verbal orders. As a result of refusing his housing assignment and ignoring orders, Winding was served with a detention notice and placed in administrative segregation on threat status.[1] He was also issued an RVR for this behavior. The RVR cited Winding for a violation of Rule 11, which prohibits "[e]ngaging in or encouraging any group demonstration or conduct which disrupts or interferes with the security or orderly running of the facility." Later that morning, Winding refused to exit from the recreational cage when ordered to do so and told prison officers that he was in possession of a razor. This behavior resulted in the issuance of a second RVR for a violation of Rule 11.

In the evening of March 25, Winding received a third RVR. This RVR was issued by Defendant Grimes and cites a violation of Rule 15, which prohibits "[t]hreatening another in any way with bodily harm or with any offense against his person or property." Grimes' description of the behavior which prompted him to the issue the RVR, as stated on the report, was Winding's "threatening to add me as a defendant in a law suit." At trial, Grimes testified that he issued the RVR because Winding often threatens prison staff with lawsuits in order to manipulate and intimidate them.

Prison rules require that an inmate placed in administrative segregation be given a

---

[1] According to Warden Grimes, "threat status" administrative segregation is designed for inmates who appear to be a threat either to themselves or to other persons. An inmate may be held in administrative segregation up to 180 days, subject to the required periodic reviews. Administrative segregation is imposed not as punishment for wrongdoing, but rather for the purpose of ensuring the order and security of the prison.

2

hearing within 72 hours of detention to determine whether he should remain there. Thereafter, prison officials are required to conduct a review every seven days concerning the appropriateness of continued detention. Plaintiff's hearing was conducted the following day, March 26, and the hearing officer recommended that he remain in administrative segregation. This same recommendation was made upon review on April 1 and April 8. Also on April 8, hearings were held on the three RVR's, and Plaintiff was found to guilty of all three and punishment was imposed. On April 14, 2008, Plaintiff's administrative segregation was once again reviewed. This review resulted in a recommendation that he be released from administrative segregation. Plaintiff was returned to the general prison population that day.

## II. Analysis

A prison inmate may establish a retaliation claim under § 1983 by proving 1) the exercise of a specific constitutional right, (2) the prison official's intent to retaliate against him because of his exercise of that right; (3) a retaliatory adverse act, and (4) causation. *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995). A prisoner has a First Amendment right to file grievances and lawsuits concerning the conditions of his confinement. Likewise, a prisoner has a First Amendment right to *threaten* to file a lawsuit or a grievance. *See Ford v. Jones*, 149 Fed. Appx. 316 (5th Cir. 2005) (holding that inmate's allegation that officials made him stay out in the cold without a jacket as a result of his threat to file a grievance sufficient to state a constitutional claim). Clearly, Plaintiff established the first, second and fourth of these elements at trial. The problem to be resolved concerns whether Plaintiff established a sufficiently adverse retaliatory act.

3

Inconsequential, or *de minimis* acts by prison officials do not give rise to an actionable retaliation action. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Rather, a prisoner seeking to establish a retaliation claim must show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Id.* at 686.

The punishment imposed on Plaintiff as a result of the RVR issued by Warden Grimes was ten days of isolation.[2] However, Grimes' uncontroverted testimony established that Plaintiff suffered *no actual* disciplinary consequences as a result of the RVR. This is because Plaintiff was already housed in administrative segregation when the punishment was imposed and was already subject to all the restrictions which would have accompanied disciplinary segregation:[3] According to Grimes, disciplinary segregation could not have, and did not, impose any additional restrictions on Winding. Furthermore, Plaintiff served no additional time in segregation as result of his punishment.

The proof at trial also established that the RVR issued by Grimes did not result in any negative consequences concerning Plaintiff's custody classification. Joyce Graham, EMCF's classification director, testified as follows concerning the prison's classification system: Classification is determined on the basis of accumulated points, with some

---

[2]The hearings for the other two RVR's was held on this same day. Winding was found guilty of those as well and sentenced to thirty days loss of canteen privileges on the first RVR and sixty days loss of canteen privileges on the second.

[3]These restrictions consisted of isolation housing and limitations on personal property and canteen privileges.

4

discretionary overrides being available.[4]  Points are assigned for various factors, including severity of prior felony convictions and  RVR's issued within the past 12 months.  RVR's, in turn, are allocated varying points depending upon the seriousness of the offense.  According to Graham, a "threat" RVR, the type at issue herein, is classified as "serious" and carries a weight of three points.  It remains in a prisoner's classification file, and counts against him for purposes of classification, for six months after it is issued.

Ms. Graham testified that these three additional points Winding received as a result of the retaliatory RVR issued by Grimes had no ultimate effect on Winding's classification.  The documents admitted into evidence support this testimony.  According to Winding's classification summary reports,  the only time the RVR at issue was considered in his classification scoring was when he underwent classification review on October 20, 2008.  At this time, he had a total of 34 points.  These number of points made him eligible for the most restrictive custody level, maximum custody, which is indicated when an inmate has 28 or more points.  Nevertheless, Winding was given a

---

[4]According to Graham's testimony and the classification score sheets admitted into evidence, as of October 2008, the scoring system was as follows:

| | |
|---|---|
| Up to 2 points: | Minimum-Out Custody |
| 3-6 points: | Minimum-Restricted Custody |
| 7-14 points: | Medium-Out Custody |
| 15-21 points: | Medium-Restricted Custody |
| 22-27 points: | Close Custody |
| 28+ points: | Maximum Custody |

discretionary override and upgraded to close custody because he had received no RVR's in the prior six months.  Based upon the scoring system and Winding's summary sheet, as well as the testimony of Joyce Graham, the court finds that three fewer points would not have resulted in a less restrictive custody classification for Plaintiff.  Thus, the three points he received for the RVR had no adverse impact on classification.[5]

At most, Grimes' retaliation against Winding caused him to suffer the annoyance of undergoing a hearing on the RVR and the possibility of a more severe punishment than that which was actually imposed.  These adverse consequences were *de minimis* under *Morris*, as they would not deter a person of ordinary firmness from exercising his constitutional rights in the future.  Thus, Winding's claim necessary fails because of his inability to prove a sufficiently adverse retaliatory act.  *Cf. Starr v. Dube*, 334 Fed. Appx. 341, 343 (1st Cir. 2009) (finding that inmates of "ordinary firmness" would not be deterred from exercising their constitutional rights merely by the filing of a disciplinary charge and the possibility of severe punishment).

For these reasons, the court finds that Plaintiff has failed to prove a violation of his constitutional rights by Defendant Grimes.  A separate judgment will be entered.

So ordered, this the 22nd day of February, 2010.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

---

[5]Also admitted into evidence was Winding's classification summary sheet dated April 9, 2009. The RVR issued by Grimes does not appear on this sheet.  This is consistent with Ms. Graham's testimony that the RVR would not have been considered after six months.